1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,

11             Respondent,              No. CR S-99-0270 WBS GGH

12        vs.

13   FRANCISCO ACOSTA ASTORGA,

14             Movant.              FINDINGS AND RECOMMENDATIONS;

15   _____/     ORDER

16   *Introduction and Summary*

17             Movant, Francisco Acosta Astorga, "Astorga," moves pursuant to 28 U.S.C. §

18   2255 to vacate his guilty plea to Counts Six and Seven of the Indictment (possession with intent

19   to distribute methamphetamine and heroin).  Astorga essentially claims that if his counsel had

20   better investigated/prepared the case, counsel would have determined that the government's case

21   was weak – and hence, no guilty plea would have occurred.  On a different tack, Astorga also

22   claims that he was not advised about the deportation consequences of the plea; again, if he had

23   been, he would not have pled guilty.  Finally, in connection with the plea, Astorga relates that his

24   counsel misadvised him about his sentence and the potential for early release.

25             Understanding that this motion filed on June 14, 2007, was grossly untimely on its

26   face given that sentence was pronounced on  May 23, 2001 (judgment filed on May 31, 2001),

1

petitioner made several anticipatory arguments on the statute of limitations.  The United States predictably made the motion to dismiss based on the expiration of the limitations period.[1]

Primarily underlying the § 2255 motion was Astorga's desire not to be deported on account of his illegal drug trafficking conviction.  Indeed, Astorga made no effort to have his conviction vacated during his 70 month sentence.  This motion was filed after Astorga's release from incarceration on the drug sentence and while he was being detained by Immigration and Customs Enforcement (ICE) pending deportation proceedings.  Whether Astorga was under supervised release while awaiting the conclusion of deportation proceedings is an issue in this motion.  During the pendency of this case and soon after the government's motion was heard in court, Astorga ceased fighting the deportation efforts, was deported, and based on Astorga's counsels' representations is presumably residing in Mexico.

Despite the shifting rationales for Astorga's tardiness in filing the § 2255 motion, and in part because of those shifting rationales, the undersigned could recommend that the government's motion to dismiss based on the statute of limitations be granted without evidentiary hearing, although the denial of an evidentiary hearing in certain respects would be problematic for assertions of late discovered facts.  However, because the court finds no cognizable claim as a matter of law as a reason to recommend dismissal, the undersigned ultimately recommends that the court invoke its power to summarily dismiss pursuant to the Rules for § 2255 Motions, Rule 4(b).[2]  The entire motion should be dismissed.

\\\\\

---

[1]  The United States has not made a motion to dismiss the § 2255 motion based on the waiver of collateral review which was part of the plea agreement.

[2]  The undersigned asked for briefing on merits issues, and, in any event, Astorga may further brief any of his contentions to the district judge.  The court has chosen to act, in part, pursuant to Rule 4(b) because it is inefficient to hold lengthy hearings about what was known and when it was known for limitations's purposes, or why certain facts weigh in favor of, or against equitable tolling, if this determination will ultimately have no relevance to Astorga or the government.  It is more efficient for all concerned to cut to the chase.

1    The undersigned includes a partial statute of limitations analysis for completeness,

2    i.e., to dismiss the law library inadequacy contentions.  That is, should a reviewing court disagree

3    with the undersigned on the merits of the dismissal (which obviates any limitations analysis),

4    there would be no need in any event to consider an evidentiary hearing on the basis of inadequate

5    law library/bilingual assistance.

6    There being no cognizable claim upon which to base discovery, including any

7    claim that the law library facilities at Taft were inadequate, Astorga's discovery motion is denied.

8    *Discussion*

9    A.  Subject Matter Jurisdiction – Astorga was In Custody at the Time The § 2255 Motion

10   Was Filed; The § 2255 Motion is Not Moot Due to Astorga's Presence in Mexico

11   Before discussing anything about the statute of limitations or the merits, a court

12   must determine its jurisdiction to reach the merits.  Issues have arisen concerning whether

13   Astorga was "in custody" for habeas purposes and whether this proceeding is moot because

14   Astorga has been released from deportation incarceration and presently resides in Mexico.

15   The undersigned first looks at mootness.  A deportation does not render a habeas

16   petition moot so long as the filing of the habeas petition was done when the petitioner/movant

17   was still "in custody" for purposes of habeas jurisdiction, and a significant collateral consequence

18   of the conviction remains (just about always).  Zegana-Gomez v. I.N.S., 314 F.3d 1124, 1127

19   (9th Cir. 2003).  Compare Abdala v. INS, 488 F.3d 1061 (9th Cir. 2001) (petition is moot when it

20   addressed only an extended INS detention).  Here, if movant was in custody for habeas purposes

21   at the time he filed his motion, the collateral consequences set forth in Zegana would keep the

22   motion from being moot.

23   Next, the court finds Astorga to have been "in custody" for habeas (§ 2255)

24   purposes despite Astorga's inadvertent admission that he was not "in custody."  Not focusing on

25   the "in custody" habeas requirement when making his *coram nobis* argument that traditional

26   habeas is not available, Astorga ironically headlines (contrary to his implicit arguments that the

court should hear his § 2255 motion despite the statute of limitations):

> **Mr. Acosta Is Not "In Custody" For Purposes Of A Section 2255 Habeas But Remains Under The Restraint of an Order of Removal** [Now Effected] **Due To His 2000 Conviction Which He May Challenge By A Writ of Coram Nobis**

Reply [Opposition] to Motion to Dismiss at 33.

Of course, if Astorga was not "in custody" for habeas purposes, the court would have no jurisdiction to adjudicate the merits of claims pursuant to § 2255. Taking the unfocused bait, or simply arguing for a correct interpretation of the law, the United States in its reply emphasizes that Astorga remains in custody for purposes of § 2255, which if true, precludes the habeas from being dismissed for lack of jurisdiction on account of mootness, or for failure to meet custody requirements.

Resolution of the issue depends upon Astoga's status after release from his drug sentence. If Astorga were subject to supervised release, he would remain in custody for habeas purposes. Matus-Leva v. United States, 287 F.3d 758, 761 (9th Cir. 2002). Astorga cites a statutory provision that a defendant's supervised release is tolled if the defendant is incarcerated for another crime, and hence not subject to supervised release. 18 U.S.C. § 3624(e). Astorga emphasizes the language in § 3624(e), "imprisoned in connection with a conviction," and argues that since the detention hold is related to his drug conviction, his supervised release is tolled. The argument is incomplete as the statutory language continues – "for a Federal, State, or local crime." Read together, as phrases in the statute must be, "imprisonment" must relate to a "conviction" for *another* crime as the case law is undisputed that supervised release imposed for a particular crime does not begin to run until one has actually been released from incarceration for that crime. United States v. Johnson, 529 U.S. 53, 57, 120 S.Ct. 1114, 1117 (2000). Simply being held in administrative custody for deportation is not custody for a "crime," and Astorga's criminal incarceration expired with his release from that custody. One cannot be actually released from incarceration for a crime, yet still not be released. Simply because a latter

4

1  administrative detention following the criminal incarceration is "related to" the conviction at

2  issue does not make it incarceration for a crime.  Supervised release was not tolled by

3  administrative detention.

4          Astorga also cites cases that supervised release is tolled if one is outside the

5  country, presently the situation, but also recognizes that there is a split on the issue.  Opposition

6  at 38, n.9.  However, the undersigned believes this argument to be inconsequential for purposes

7  of the § 2255 jurisdiction argument because, tolled or not, the Ninth Circuit has held that

8  supervised release is not extinguished by deportation.  United States v. Ramirez-Sanchez, 338

9  F.3d 977, 981 (9th Cir. 2003).  Astorga's *status* as being subject to supervised release places him

10  within the "in custody" requirements for § 2255.

11          The bottom line is that because supervised release had not been extinguished

12  while Astorga was in ICE custody pending deportation, and was not extinguished after

13  deportation, the court has jurisdiction to adjudicate the § 2255 motion and the United States'

14  defenses thereto.   Although the ability to proceed under § 2255 will extinguish the *coram nobis*

15  availability, see infra, Astorga cannot twist the law into such contortions as to implicitly argue

16  that the court has jurisdiction under § 2255 by virtue of its counter-defenses to the statute of

17  limitations argument, but that it lacks jurisdiction under § 2255 for purposes of advancing a

18  *coram nobis* argument.  It is one or the other, and the undersigned picks the correct interpretation

19  that jurisdiction exists under § 2255.

20      B.  Barring a Belated Commencement Date or Equitable Tolling, The Statute of

21  Limitations Bars this § 2255 Motion

22          The facts, on their face, are stark.  Judgment was entered in this action on May 31,

23  2001; no appeal was taken.  Therefore, the judgment became final for § 2255 purposes on June

24  10, 2001.[3]  Barring any of the unusual commencement dates set forth in 28 U.S.C. § 2255 (f),

25  ────────────────

26      [3] Finality for purposes of a § 2255 motion is "when the time expires for filing a petition
for certiorari contesting the appellate court's affirmance of the conviction."  Clay v. United

5

1   Astorga had one year from that date on which to file his appeal.  As stated above, the motion in

2   this case was filed on June 14, 2007, over five years tardy.  If § 2255(f)(4) applies, Astorga had

3   one year from the "date on which the facts supporting the claim or claims presented could have

4   been discovered through the exercise of due diligence."  More will be said on this latter

5   commencement date below.  Also, as discussed below, the commencement date set forth in §

6   2255(f)(2) (governmental impediment to filing) is not a possible commencement date.

7           C.  <u>Section 2255(f)(2) Cannot Apply, and No Evidentiary Hearing Is Necessary</u>

8           As noted above, the commencement date of the habeas statute of limitations may

9   vary with the circumstances.  The usual rule allows one year after the finality of the judgment.

10  However, if the government creates an impediment to the filing of a timely motion, "in violation

11  of the Constitution or laws of the United States," § 2255(f)(2), the statute does not commence

12  running until the impediment is removed.  In his opposition, but as will be seen, not in his initial

13  § 2255 motion, Astorga alleges that the failure of the law library at his place of incarceration

14  (Taft) to have an entire bilingual library, or in the alternative, competent bilingual translators,

15  was a government imposed impediment to the timely filing of the motion, citing <u>Whalem-Hunt v.</u>

16  <u>Early</u>, 233 F.3d 1146, 1148 (9th Cir. 2000) (a law library must contain a copy of the AEDPA

17  statutory provisions) and <u>Mendoza v. Carey</u>, 449 F.3d 1065, 1070 (9th Cir. 2005) (equitable

18  tolling case concerning non-English speaking inmates and the need for translators).  Astorga also

19  alternatively claims that the above, alleged defects warrant equitable tolling if the one year from

20  judgment provision is utilized for the commencement of the limitations period.

21          Anticipating that he had a limitations problem, Astorga set forth in his initial §

22  2255 Motion that he did not otherwise timely file because "Mr. Astorga did not discover the facts

23

24  <u>states</u>, 537 U.S. 523, 525, 123 S.Ct. 1072, 1075 (2003).  Because no appeal was ever filed to the
    Ninth Circuit, and hence there can be no appeal to the U.S. Supreme Court, this conviction
25  became final on the expiration of time to appeal to the Ninth Circuit (10 days after entry of
    judgment).  In other words, any potential of seeking review to the U.S. Supreme Court expired on
26  the same day that petitioner forfeited his appeal of right to the Ninth Circuit.

supporting his ineffective assistance of counsel claim until he met with his current counsel,
James Smith, on July 5, 2006." Motion at 3.  With respect to the immigration consequences of
his conviction, the main point of the § 2255 Motion, Astorga stated: "Mr. Astorga diligently
followed [his trial counsel's] advice and waited to contact Mr. Smith two months before his
scheduled release....[u]ntil he contacted Mr. Smith, Astorga had no way to discover the
inaccuracy of Ms. Gilig's advice and the specific consequences of his plea before he contacted
his current counsel." Motion at 4.  Not a word was said in the Motion about Astorga's alleged
diligent efforts to visit the Taft law library, and about his frustration in not being able to decipher
the legal materials.

That is, not a word until the argument was added in response to the government's
motion to dismiss.  Astorga cannot at once be both unaware that he has a factual basis for any
legal claims to make, but at the same time be so concerned about filing a habeas petition that he
is diligently pursuing legal research concerning facts which are unknown to him.  Moreover,
Astorga affirmatively alleged that he was taking his lawyer's advice about immigration concerns
by waiting until his prison term had expired or was about to expire.  At best, the new found
argument of inadequate translation services is a theoretical discussion about the needs of non-
English speakers in a prison context coupled with a prior admission that none of the law library
business really mattered anyway.  Moreover, what can be logically inferred from the § 2255
motion is that when Astorga allegedly became aware of the pertinent facts, he had no significant
difficulty whatsoever in getting a § 2255 motion on file in a timely fashion.

The Ninth Circuit generally requires an evidentiary hearing in habeas cases when
facts are at issue which could establish a "colorable claim" – here a contention about the law
library.  Landrigan v. Schiro, 441 F.3d 638, 650 (9th Cir. 2006)(en banc), overruled as noted
below.  However, the Supreme Court has recently cautioned that : "It follows that if the record
refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is
not required to hold an evidentiary hearing." Schriro v. Landrigan, __U.S.__, 127 S.Ct. 1933,

1940 (2007).  Here Astorga's own factual assertions in the § 2255 motion preclude the "law

library" assertion in response to the government's motion to dismiss.  No evidentiary hearing is

necessary.[4]  This is so whether one views Astorga's latest law library claim as an "impediment"

which has never been removed, or as a reason to apply equitable tolling.

D.  Upon Analysis Section 2255(f)(4) Is Not ApplicableBecause No Allegedly Belatedly

Discovered Claim Exists As a Matter of Law

This section will not permit the statute of limitations to commence running if the

factual predicate of the claim, in the exercise of due diligence, could not have been known until a

certain time in the future.  At *that* time the limitations period commences.  As discussed above,

Astorga claimed in his § 2255 motion that he did not discover the "facts" about his counsel's

ineffectiveness or his deportation problem until much later than the normal expiration of the

statute of limitations.  In many cases, concepts such as "when a fact became known" or  "due

diligence" are intensely factual, and cannot be determined on the papers.  Such is not pertinent

here because regardless of the diligence exercised:

1. Allegations of pre-plea ineffectiveness in terms of case preparation are not

actionable in any event;

2.  Counsel cannot be ineffective as a matter of law for failure to advise about

collateral consequences;

3. The alleged mis-advice of the potential of an early release is insufficient as a

matter of law to constitute the "gross mis-advice" of counsel concerning sentence necessary for

the granting of relief regardless of the time Astorga sufficiently was aware of the mis-advice.

Taking first the matter of unpreparedness, including such allegations as: failure to

properly assess the credibility of the government informant; insufficient preparations or

---

[4]  The decision here obviates the difficult question of how to hold an evidentiary hearing in fairness to the government when the government would be unable to cross-examine Astorga – a person who is precluded by law from reentering the country.

1  explanations regarding the audio tapes showing Astorga's drug trafficking involvement; and

2  generally underestimating the strength of the defense and/or the weakness of the prosecution's

3  case, one can easily see why such allegations are not cognizable in habeas corpus to upset a

4  guilty plea.  Every guilty plea would possess the potential of being the subject of attack by a

5  defendant who after years in prison became unhappy with his plight – with the concomitant need

6  for a trial on the merits of a petitioner's defense years after the evidence had been put away or

7  misplaced.  That is why United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992), held that pre-

8  plea allegations of ineffective assistance of counsel (not directly going to the voluntariness of the

9  plea itself) were waived by the guilty plea.  See also Moran v. Godinez, 57 F.3d 690, 700 (9th

10  Cir. 1994) (allegations of ineffectiveness for failure to move to suppress confession prior to the

11  plea not actionable); United States v. Friedlander, 217 Fed, Appx.. 664 (9th Cir. 2007) (citing

12  Bohn); Dupree v. Warden, 2008 WL 1944144 (N.D. Cal. 2008); United States v. Ramos, 2008

13  WL 1788402 (D. Hawaii 2008).

14        Astorga recognizes that all allegations of error aside from ineffective assistance of

15  counsel, are waived by a guilty plea.  Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602 (1973).

16  But he essentially argues that all of these errors, if couched as relating to ineffective assistance of

17  counsel can be resurrected as if Tollet did not exist.  It is simply not that easy to backdoor Tollet.

18  See cases cited above.  Only in those situations where very deficient advice concerning the plea

19  process itself, e.g.,  gross misapprehensions about the potential penalty related to the defendant

20  *combined with* mis-advice about the likelihood of prevailing at trial, threats or undue coercion,

21  can the guilty plea be upset.  A guilty plea is coerced where a defendant is "induced by promises

22  or threats which deprive [the plea] of the nature of a voluntary act."  Iaea v. Sunn, 800 F.2d 861,

23  866 (9th Cir.1986) (quotation marks and citation omitted) Doe v. Woodford, 508 F.3d 563, 570

24  (9th Cir. 2007).

25        Moreover, allegations *per se* of underestimating the chances of prevailing at trial

26  because of an alleged lack of preparation et al., cannot possibly be effective to upset a guilty plea

1  in a real world analysis because Astorga admitted under oath *that he was in fact guilty*.[5]  Habeas

2  corpus would lose all touch with reality if it were the rule that one could reverse a criminal

3  judgment because of allegedly errant speculations about the chance of prevailing at trial even

4  though one admits guilt under oath.  Habeas corpus is meant to correct injustices, not to wink at

5  reality years after the fact.

6          Thus, the court will not hold an evidentiary hearing to determine when Astorga

7  became aware of his allegations of ineffective assistance of counsel in pre-plea

8  investigative/preparation matters because such are not actionable in any event.

9          Petitioner next alleges that he was not advised about the consequences of his plea

10  by defense counsel insofar as deportation consequences were of important concern to him.  And

11  despite the fact that Astorga was advised by the court that he could be deported as a result of

---

13  [5] Astorga accepted the factual basis in the plea agreement that he possessed with intent to distribute methamphetamine and heroin on the day alleged in the indictment. § 2255 Motion, Exhibit 1 (Exhibit A) (Plea Agreement Factual Basis).  He again admitted such at the plea

14  colloquy.

15  The Court: It's not a crime just to be present.  You have to do something to further the possession with intent to distribute the methamphetamine before you're guilty.  That's what I explained to

16  you.
Do you think you're guilty or you're not guilty of–

17  Mr. Acosta Astorga: Guilty
The Court: And what did you do to make you guilty of this charge....?

18                    ***
The Court: All right.  Then tell me what happened, Mr. Acosta.

19  Mr. Acosta Astorga: I knew it was there.
The Court: You knew what was there?

20  Mr. Acosta Astorga: The drugs.
The Court: All right.  How did you know they were there?

21  Mr. Acosta Astorga: Well, we have talked about it before.
The Court: You talked to Mr. Soto about it?

22  Mr. Acosta Astorga: With the informant.  That's who I have talked to.
The Court: So you helped make the deal; is that it?

23  Mr. Acosta Astorga: Well, yes.
                    ***

24  The Court: You set up the deal and Mr. Soto came with the drugs?  Is that what happened?
Mr. Acosta Astorga: Well, I talked a little bit to the informants about it.

25  The Court: Did you set up the deal with the informants to sell the drugs to them?
Mr. Acosta Astorga:  Yes.

26  § 2255 Motion, Exhibit 54 at 25-28 (Plea Colloquy).

1   pleading guilty, and that Astorga understood this, see § 2255 Motion, Exhibit 54 at 14, and that

2   he was informed by an immigration attorney just before he gave his plea that he would be

3   deported,[6] he believes he was prejudiced by such conduct on the part of his defense counsel.

4   Again, there is no need to determine at what time Astorga reasonably became aware of his

5   deportation potential because such is not actionable as a matter of law.

6          Dispositively, even if Astorga was not advised by his trial counsel about the

7   consequences of deportation (and the court closes its eyes to the other evidence demonstrating

8   that Astorga knew full well about the consequences)[7], the Ninth Circuit has unequivocally held

9   that such non-advice may not be the basis of ineffective assistance of counsel.  Deportation

10  consequences, even if "virtually automatic," are collateral consequences to the plea process, the

11  failure about which to advise by the court do not give rise to due process violations.  United

12  States v. Amador-Leal, 276 F.3d 511, 515-517 (9th Cir. 2002).  It follows from an attorney's

13  standpoint that "[f]ailure to advise [the defendant] of a collateral penalty cannot be held to be

14  below an objective standard of reasonableness."  Torrey v. Estelle, 842 F.2d 234, 237 (9th Cir.

15  1988).[8]  During the course of the Torrey opinion, the Ninth Circuit expressly recognized

16  deportation consequences as a collateral penalty (consequence).  Id. at 236 citing Fruchtman v.

17  Kenton, 531 F.2d 946, 949 (1976).[9]

18  _____

19      [6] Astorga's brief contained this admission, Opposition to The Government's Statute of
    Limitations Motion at 18 n.5; but Astorga alleges that he does not recall this conversation.

20  Second Astorga Declaration at para.4.

21      [7] According to the Motion, Astorga was informed by his defense counsel that she did not
    have the requisite knowledge concerning deportation consequences, i.e., when asked about them,

22  she stated that she did not know.

23      [8] Because another agency must act to enforce any deportation consequences, the penalties
    are collateral.  Amador-Leal, 276 F.3df at 514-515.

24      [9] While collateral, the undersigned does not mean to intimate that deportation
25  consequences are always unimportant to defendants.  The court accepts Astorga's position that
    these consequences were of the utmost importance to him.  That is why his plea of guilty after
    being advised of those potential consequences by the court indicates his state of mind at the time
26  and his decision to knowingly, albeit unhappily, accept such deportation as part of the plea

1    The above binding authority applies to this case, and the situation set forth in the

2   *coram nobis* case of <u>United States v. Kwan</u>, 407 F.3d 1005 (9th Cir. 2005), and relied upon by

3   Astorga, is clearly distinguishable.  In that case , the attorney made affirmative

4   misrepresentations that there would be no deportation consequences.  There is quite a difference

5   as recognized by <u>Kwan</u> between the failure to advise and affirmative mis-advisement.  Moreover,

6   this must be true because <u>Kwan</u> could not overrule <u>Amador-Leal</u> and <u>Torrey v. Estelle</u>.

7    Because Astorga's defense counsel cannot be faulted for ineffective assistance as

8   a matter of law for failing to advise about a collateral consequence, there is no need to analyze

9   the apparent lack of prejudice in any event due to the fact that Astorga was advised prior to his

10  plea of the potential deportation consequences both by Judge Shubb and an immigration attorney.

11   Finally, Astorga claims that his attorney's mis-advice about the availability of

12  early release programs as applied to Astorga is the type of gross mis-characterization of sentence

13  which should make his plea involuntary/unintelligent.  Astorga alleges that he believed at the

14  time of his plea that he would be eligible for the " two year off" early release program because

15  his sentence would be 60 months (or less).  His attorney predicted that he would receive a five

16  year sentence (60 months), but that two of the years could be served in various drug abuse

17  programs. § 2255  Motion at 48.  Because he received a 70 month sentence, he was ineligible for

18  any early release programs.  <u>Id</u>. [10]

19   First, assuming the errant prediction was made, *and* that predictions concerning

20  early release programs count at all, *and* that counsel was unreasonable in not predicting the

21  ultimate sentence/applicability of early release program, the error is not the type of "gross" mis-

22  characterization that <u>Iaea</u> had in mind.  <u>Iaea</u> does not hold that any off-the-mark prediction will

23

24  consequences.  The importance of the consequences to him also negatives any latter day assertion
     that he did not hear his immigration attorney's advice prior to plea that he would be deported.

25   [10]  This assertion is also hard to believe in that at the plea colloquy, Astorga's counsel

26  made a specific reference to the low end of the Guidelines as being 70-82 months, *and that
     Astorga understood that.* § 2255 Motion, Exhibit 54 at 9-10.

1    suffice for ineffective assistance of counsel.  Indeed, when one canvasses the case law, situations

2    parallel to that of Astorga have not been successful on the Iaea rubric.  See Sophantharong v.

3    Palmateer, 378 F.3d 859, 868-869 (9th Cir. 2004) (incorrect prediction that Oregon's "Second

4    Look Statute," awarding a reduction in sentence of up to five years, could apply was not a gross

5    mischaracterization of sentence); Donganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990)

6    (prediction of not more than a 12 year sentence which proved erroneous when defendant was

7    actually sentenced to 15 years incarceration on one count and a 20 year probation term on another

8    – not a gross mischaracterization; United States v. Perrigo-Haddon, 221 Fed. Appx. 619 (9th Cir.

9    2007) failure to advise of a potential three year probation as opposed to a one year terms of

10   supervised release not a gross mischaracterization).  Compare Riggs v. Fairman, 399 F.3d 1179,

11   1182-83 (9th Cir. 2005) (representation that the maximum exposure was 9 years when the real

12   ultimate exposure (and actual sentence) was 25-life, a gross mischaracterization).

13          Second, and independently of the above, even substantial inaccuracies about

14   possible outcomes of a plea bargain related by counsel to a defendant are not actionable under an

15   ineffective assistance theory if the defendant was advised by the court or otherwise that the judge

16   made the final decision on a sentence after plea bargain.

17          Even if Womack's counsel's performance were somehow deemed ineffective,
       Womack was not prejudiced by his counsel's prediction because the plea
18        agreement and the state district court's plea canvass alerted Womack to the
       potential consequences of his guilty plea.  See Doganiere v. United States, 914
19        F.2d 165, 168 (9th Cir.1990) (holding that the petitioner "suffered no prejudice
       from his attorney's prediction because, prior to accepting his guilty plea, the court
20        explained that the discretion as to what the sentence would be remained entirely
       with the court").

21

22   Womack v. DelPapa, 497 F.3d 998, 1003 (9th Cir. 2007).

23          The parties agree that Judge Shubb and the plea agreement informed Astorga that

24   the judge was not bound by any agreement or recommendation as to sentence, and that Astorga

25   could be sentenced at a higher term than what counsel might have thought.

26   \\\\\

1

2

3

> Sentencing is a matter solely within the discretion of the Court...and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement....The defendant understands that neither the prosecutor, defense counsel, not the Court can make a binding prediction or promise regarding the sentence he will receive.

4   § 2255 Motion, Exhibit 1 at 2 (Plea Agreement)

5   [During Court colloquy with defendant at the taking of the plea, and specifically at the time the

6   parties and the court are discussing application of the safety valve]

7

8

> The Court: It would govern the guideline range, but I think Mr. Acosta [Astorga][11] needs to understand that these all come under the heading in the plea agreement of "recommendations"–

9

> Ms. Grad: Right.

10

11

12

> The Court: – and it does not mean that the court will necessarily follow any of these recommendations. It will be up to the court to determine whether he qualifies for the safety valve, it will be up to the court to determine what the guidelines are, and it will be up to the court to determine what the sentence is. Do you understand that Mr. Acosta?

13

> Mr. Acosta Astorga: Yes.

14   § 2255 Motion,  Exhibit 54 at 10-11, Plea Colloquy

15                                        ***

16

17

18

19

> The Court: The U.S. attorney has agreed to make certain recommendations in each of your cases.
> Do you understand that those are only recommendations and that the court can sentence you to anything up to the maximum sentence provided by law as I've explained it to you?
> Do you understand that Mr. Acosta?

> Mr. Acosta Astorga: Yes.

20

21   Id. at 16.

22                                        ***

23

24

> The Court: ....Mr. Acosta, have you received a copy of the plea agreement and has it been read to you in Spanish?

---

25

26

[11]  The defendant's full name was Francisco Acosta Astorga.  As often happens with Hispanic defendants, the parties and the court will refer to a different "last name" at times, here either Acosta or Astorga.

1   Mr. Acosta Astorga: Yes.

2   The Court: Do you understand it?

3   Mr Acosta Astorga: Yes.

4   Id at 9.

5       <u>Womack</u> could not be better satisfied than by the colloquy set forth above.

6   Because Astorga could not have suffered prejudice as a matter of law by his counsel's mis-advice

7   about the potential incarceration terms and consequent early release programs, a second reason

8   exists for dismissing this claim.

9       In sum, there is no need to hold an evidentiary hearing concerning when Astorga

10   learned of the facts concerning his claims in order to adjudicate a statute of limitations defense,

11   because his claims have no viability.

12       E. <u>Astorga's Contentions About the Availability of Coram Nobis Are Erroneous and</u>

13   <u>Inconsequential</u>

14       As set forth above in the jurisdictional section, Section A, Astorga's supervised

15   release status at the time of bringing his *coram nobis* claims, and the resultant existence of

16   jurisdiction under § 2255 precludes the court's ability to act in *coram nobis*.  <u>Matus-Leva</u>, <u>supra</u>.

17   Just as importantly, the lack of any viable claim as seen from the preceding section would also

18   make the *coram nobis* assertions inconsequential.

19       F. <u>Astorga's Discovery Motion is Denied</u>

20       The court need not discuss in depth Astorga's discovery motion.  Because no

21   cognizable claim exists as a matter of law, the sought discovery would be useless.

22   *Conclusion*

23       The undersigned  HEREBY RECOMMENDS:

24       1. The entire § 2255 motion be denied pursuant to summary dismissal (resolves

25   docket # 138 and 148);

26   \\\\\\

1       2.  The claim in *coram nobis* be dismissed as unsustainable in light of § 2255

2  jurisdiction; or if the merits of *coram nobis* are nevertheless reached, the claim be denied on the

3  same basis as set forth for the § 2255 motion (resolves docket #138 and 148 );

4       3.  In the alternative, if the entire § 2255 motion is not denied, that any §

5  2255(f)(2) law library/legal assistance "impediment" contention in connection with the statute of

6  limitations, or its counterpart in equitable tolling, be denied (partially resolves docket #148).

7      These findings and recommendations are submitted to the United States District

8  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

9  days after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12  shall be served and filed within ten days after service of the objections.  The parties are advised

13  that failure to file objections within the specified time may waive the right to appeal the District

14  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

15      The undersigned HEREBY ORDERS that the discovery motions be denied

16  (resolves docket # 155 and #167).

17  Dated: 06/12/08             /s/ Gregory G. Hollows

18                                UNITED STATES MAGISTRATE JUDGE

GGH:gh:035

19  asto0270.257

20

21

22

23

24

25

26